CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE VA
FILED

MAY 17 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:04CR00095 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| PHILLIP CHARLES GALLIHUGH, | ) | |
| | ) | |
| Defendant, | ) | By: B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with willfully and knowingly, and with intent to deceive, falsely representing a Social Security Number, to wit: 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, to be the Social Security account number assigned by the Commissioner of Social Security to him, when in fact the Commissioner of Social Security has not assigned such number to him, in violation of 42 U.S.C. § 408(a)(7)(B); and, in Count Two, with receiving, concealing and retaining money belonging to the United States Social Security Administration, a department or agency of the United States, knowing that it had been embezzled, stolen, purloined or converted, upon representation that his Social Security Number was 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, when in fact he knew that such number is not the account number assigned to him by the Commissioner of Social Security, in violation of 18 U.S.C. § 641. With respect to both counts, the Grand Jury also made a special finding, pursuant to the United States Sentencing Guidelines § 2B1.1, that the loss attributable to the offense is greater than ten thousand dollars ($10,000). On May 16,

2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government. The government has agreed to dismiss Count Two upon acceptance of defendant's plea to Count One.

At this hearing the defendant was placed under oath and testified that his full legal name is Phillip Charles Gallihugh,[1] that he was born on September 25, 1939, and that he completed a post-secondary associate's degree. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he was subject to no other physical or mental condition that impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to these offenses.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged

---

[1] The defendant's name is styled "Phillip Gallihugh" on the Indictment but "Phillip Charles Gallihugh" on the plea agreement.

in Count One, including any facts related to sentencing.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged are felonies and that, if his plea is accepted, he will be adjudged guilty of such offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100, and that he will be required to pay restitution in the amount of $26,808.00, pursuant to 18 U.S.C. § 3663.[2] The defendant further stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offenses with which he is charged is, in the case of Count One, five years imprisonment and a $250,000 fine, together with supervised release; and in the case of Count Two, ten years imprisonment and a $250,000 fine, together with supervised release. The defendant was informed

---

[2] At the hearing, counsel for the government informed the court that the defendant has already paid his restitution in full and has also tendered a check for the full amount of the special assessment.

-3-

Case 3:04-cr-00095-JHM   Document 27   Filed 05/17/05   Page 3 of 9   PageID #: 48

under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have an opportunity to challenge the reported facts and the application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney has given him and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant testified that he agreed that, for purposes of USSG § 2B1.1, his base offense level should be six (6). The defendant also testified that he agreed that the amount of loss attributable to the offenses for which he has been charged is between $10,000 and $30,000 and that, therefore, pursuant to USSG § 2B1.1(b)(1)(C), four (4) levels should be added to his base offense level. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility. The defendant stated that he understood that the government would recommend that his sentence of incarceration be fixed at the low end of the applicable sentencing

guideline range, but that the court would not be bound by the government's recommendation.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless he voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Count One of the Indictment.

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

On July 18, 2001, Phillip Charles Gallihugh applied, via the Social Security Administration's (SSA) internet website, for retirement benefits. On page two of the printed application, there is a section titled "Changes to be reported and How to Report." Within that section, the application states that if the applicant is awarded benefits, they must tell SSA if the amount they expect to earn this year or next year changes. On the same page, under the section "How to Report," the application states that if the applicant does not report any of these changes and the change causes an overpayment, they may have to pay a penalty in addition to repaying the overpayment. On the third page of the application, just prior to the signature area, there is a disclaimer reading:

> "I know that anyone who makes or causes to be made a false statement or misrepresentation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under Federal law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true."

Gallihugh signed the application, dated July 19, 2001. A letter was later provided by Gallihugh dated August 1, 2001, stating that his estimated total earnings for 2001 were $26,217.00, including earnings of $22,167.00 from Visual Access, Inc., and $4050.00 from self-employment. During this time period, Gallihugh elected to have his payments directly deposited into a checking account number 07698763 at USAA Federal Savings Bank, routing number 3140743269. In August of 2003, the Winchester, Virginia SSA Field Office received an anonymous telephone call stating that Gallihugh was working at that time and was not reporting his income. Gallihugh was reportedly working for a graphics company in Alexandria, Virginia. The caller went on to say that Gallihugh was working and using his wife's SSN, 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. On August 27, a SSA employee from the Washington Field Office contacted Mrs. Gallihugh and asked for the Social Security

-6-

Case 3:04-cr-00095-JHM   Document 27   Filed 05/17/05   Page 6 of 9   Pageid#: 51

Numbers assigned to her and her husband, Phillip Gallihugh. Mrs. Gallihugh provided both numbers willingly. After receiving the information from Mrs. Gallihugh, the SSA employee checked SSA records and determined that Gallihugh reported no earnings after 2001, but that Mrs. Gallihugh's earnings, reported under Social Security Number 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, increased dramatically beginning in 2001. The records stated that she earned $14,999.97 from Visual Access, Inc. in 2001, along with $3371.00 in self-employment earnings. In 2002, Mrs. Gallihugh's reported earnings were $51,532.31 from Visual Access, Inc., and her 2003 reported earnings from Visual Access, Inc., were $51,999.00. Conversely, Gallihugh's earnings were substantial from the time he began working through the time that he filed for retirement benefits in 2001. Gallihugh's earning record shows that he began working at Visual Access, Inc. in 1998 and he earned $27,594.00 that year. In 1999, Gallihugh's reported earnings from Visual Access, Inc. were $36,874.92; earnings for 2000 were $41,483.25, and from 2001, $28,899.94. There were no reported earnings for Gallihugh after his retirement. Mrs. Gallihugh never worked for Visual Access, Inc.

On January 6, 2004, a telephone call was placed to Visual Access, Inc., which is located in Alexandria, Virginia. Robert Davis, the CEO of the company, confirmed that Phillip C. Gallihugh was employed by Visual Access, Inc., serving as the office manager.

SSA records further indicated that Phillip Gallihugh began receiving Retirement Benefits in 2001, and that the total loss to the government due to Gallihugh's misrepresentations to the SSA, is $26,808. The United States Attorney's Office has confirmed that Mr. Gallihugh has made full restitution of the losses to the SSA.

**PROPOSED FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the

following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that this court accept the defendant's plea of guilty to Count One of the Indictment, adjudge him guilty of that offense, and dismiss Count Two against him. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. A sentencing hearing hereby is scheduled for August 2, 2005 at 10:30 a.m. before the presiding District Judge in Charlottesville.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the

report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

May 17, 2005
Date